**REMCOR PRODUCTS CO., Plaintiff,**

v.

**SCOTSMAN GROUP, INC., and Booth, Inc., Defendants.**

No. 93 C 1822.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 9, 1994.

Thomas D. Rosenwein, Schaefer, Rosenwein & Fleming, and Thomas R. Juettner, Michael Piontek, Steven Lee Underwood, Paul G. Juettner, and Robert A. Lloyd, Juettner, Pyle & Lloyd, Chicago, IL, for plaintiff.

Richard Jerold Hoskins, Michael Louis Brody, Stuart Irwin Graff, Kevin J. Byrne, and Randall M. Whitmeyer, Schiff, Hardin & Waite, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff Remcor Products Co. sued defendants Scotsman Group, Inc. and Booth, Inc. for infringing United States Patents No. 4,300,359 (the '359 patent) and Re. 34,465 (the '465 patent). Each is entitled "Cold Plate System for Ice Dispenser". We refer to both collectively as the '359 patents. Presently before the court is defendants' Motion for Summary Judgment. Defendants' sole contention in support of the motion is that the '359 patents are invalid as obvious.

While the ultimate question of patent validity is one of law, the conclusion that an invention would not have been obvious is dependent upon several basic factual inquiries. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). Therefore, a district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material facts. FED.R.CIV.P. 56(c).

A patent is invalid as obvious

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103. In determining whether an invention would have been obvious at the

time it was made, section 103 requires a court (1) to determine the scope and content of the prior art; (2) to ascertain the differences between the prior art and the claims at issue; and (3) to resolve the level of ordinary skill in the pertinent art. *Graham*, 383 U.S. at 17, 86 S.Ct. at 693. "Such secondary considerations as commercial success, long felt but unsolved needs, [and] failure of others" to invent are also relevant to the obviousness inquiry. *Id.* at 17–18, 86 S.Ct. at 693–94. Since the facts to support a conclusion of invalidity of an issued patent must be proved by clear and convincing evidence, this standard must be applied by the court in deciding whether requirements have been met for summary determination of obviousness. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## I. *FACTUAL DETERMINATIONS*

### A. *Scope and Content of Prior Art*

■ To determine the scope and content of the prior art, the court must first determine what constitutes the relevant art. One basis for determining whether art is analogous is to look at whether it deals with a problem similar to that being addressed by the inventor. *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1572 (Fed.Cir. 1984). To be considered in determining obviousness, the prior art must be "reasonably pertinent to the particular problem with which the inventor was involved." *Union Carbide*, 724 F.2d at 1572.

In support of their motion, defendants assert that three prior patents render the claims of the '359 patents obvious: (1) Patent No. 1,372,135 issued to C.K. Green entitled "Water Cooler" ("the Green patent"), (2) Patent No. 1,596,865 issued to G.L. Bennett entitled "Ice Box" ("the Bennett patent") and (3) Patent No. 3,217,509 issued to Albert G. Weil entitled "Ice Making and Vending Apparatus" ("the Weil patent"). The Green patent and the Bennett patent are cited in the '359 patents as related references. The Examiner did not cite the Weil patent as a reference. Defendants assert that the Weil patent is prior art which must be considered in the obviousness determination. Plaintiff

does not disagree. *See* Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ.J., at p. 6. The court agrees with the parties that the Weil patent is analogous prior art. The court, therefore, must determine the scope and content of the Weil patent, the Green patent and the Bennett patent.

The claims of these three patents disclose most or all of the elements of the '359 claims. The Green patent discloses the use of a cold plate in the bottom of an ice container. Water is flowed through the cold plate to provide cold drinking water. *See* Mem. in Supp. of Defs.' Mot. for Summ.J., at 3–4 and Ex. E (the Green patent). The Bennett patent claims an ice box comprising two chambers separated by a manually operated, slidable door through which ice can fall into the lower chamber. *See* Mem. in Supp. of Defs'. Mot. for Summ.J., at 4 and Ex. F (the Bennett patent). The Weil patent discloses a device comprising freezing plates for forming ice, a crusher assembly to crush the ice, a dispenser to dispense the crushed ice, a hopper for storing the ice, an extra storage compartment below the hopper, a dump valve to allow ice from the upper compartment to travel to the lower storage compartment, and an agitator to maintain the crushed ice in a free-flowing condition. *See* Weil Patent, Ex. H to Defs.' Mot. for Summ.J., cols. 12–14.

A review of the descriptions and objects of the references can also assist in determining the scope and content of the prior art. *See In re Van Mater*, 341 F.2d 117, 120–21, 52 CCPA 1076 (1965) (reference discloses what it suggests to person of ordinary skill in the art); *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1576 (Fed.Cir.1991) (must look to a teaching or suggestion in the references to support their use in the particular claimed invention). The Green Patent states that the object of the invention is to provide a sanitary water cooler wherein the drinking water will not come in contact with the ice. Green Patent, Ex. E in Supp. of Defs.' Mot. for Summ.J., at col. 1, lines 8 to 24. Bennett describes an ice box for refrigeration in which one chamber holds stored ice which has no effect on refrigeration and another chamber holds the ice actually used to refrigerate. Bennett Patent, Ex. F in

Supp. of Defs.' Mot. for Summ.J., at col. 1, lines 1 to 11. Bennett further provides means for the two separate chambers to be in communication such that the user can easily take ice from storage chamber and put it into the refrigeration chamber. *Id.,* lines 28 to 40. The object of the Weil patent was to provide an improved, compact, commercial ice-making and vending machine. *See* Bennett Patent, Ex. H. in Supp. of Defs.' Mot. for Summ.J., at col. 1, lines 25 to 32. The Weil patent contemplates that the claimed device can be used in conjunction with a drink vending machine. *Id.,* col. 1, lines 30–32.

### B. *Differences Between the Prior Art and the Claims at Issue*

The independent, and broadest, claims of the '359 patents disclose the following. Claim 1 of the '359 patents claims:

In combination with an ice dispenser of a type having

(a) a hopper for storage of a mass of small particles of ice and

(b) means for dispensing ice from said hopper,

(c) a container for holding a quantity of ice,

(d) a cold plate in said container, and

(e) means extending between said hopper and said container for automatically conveying ice from said hopper to said container to maintain a supply of ice in said container in contact with said cold plate, wherein said container is beneath said hopper and said ice conveying means comprises a conduit through which particles of ice gravitate from said hopper to said container and

(f) said ice dispenser includes an agitator in said hopper for maintaining the mass of ice in free flowing form and form facilitating entry of ice into said conduit for gravitation to said container.

Claim 4 of the '359 patents claims:

In combination with an ice dispenser of a type having

(a) a hopper for storage of a mass of small particles of ice,

(b) an agitator in said hopper for moving the mass of ice,

(c) an ice maker for manufacturing ice and for introducing the ice into said hopper, and

(d) means for dispensing ice from said hopper,

(e) an ice pan for holding a quantity of ice,

(f) a cold plate in said ice pan, and

(g) means extending between said hopper and said ice pan for conveying ice from said hopper to said ice pan to maintain a supply of ice in said ice pan in contact with said cold plate.

Claim 9 of the '359 patents claims:

In combination, an ice dispenser of a type having

(a) a hopper for storage of a mass of small particles of ice,

(b) an agitator in the hopper for moving the mass of ice,

(c) an ice maker for manufacturing and introducing ice into the hopper,

(d) outlet means for dispensing ice from said hopper,

(e) a container for holding a quantity of ice,

(f) a cold plate in said container, and

(g) means responsive to a decrease in the amount of ice in said container for automatically conveying ice from said hopper to said container to maintain a supply of ice in said container in contact with said cold plate.

Ex. A in Supp. of Defs.' Mot. for Summ.J. (the '465 patent), at cols. 5–6.

A side-by-side comparison reveals that the combined references include most or all of the elements of the independent claims of the '359 patents. The prior art references disclose devices having multiple chambers separated by means to allow ice to flow between the chambers. *See* Bennett Patent, attached as Ex. F to Mem. in Supp. of Defs.' Mot. for Summ.J. The references describe the utilization of cold plates to dispense cold beverages. *See* Green Patent, Ex. E to Mem. in Supp. of Defs.' Mot. for Summ.J. The references also teach the combination of an ice maker, an ice dispenser, multiple ice

storage compartments, means for conveying the ice between compartments and an agitator to maintain ice flow. *See* Weil Patent, Ex. H to Defs.' Mot. for Summ.J.

In combination, then, the prior art disclosed each individual element of claim 4 of the '359 patents. One limitation of claims 1 and 9 of the '359 patents, however, is not disclosed in the prior art references. Neither Weil nor Bennett nor Green nor the combination of the three appears to include means to automatically convey ice between the ice compartments to maintain the ice supply to the cold plate. *See* claims 1 and 9 of the '359 patents.

The term "automatic", however, may not be as clear as it seems. During prosecution of the patent, in response to the Examiner's rejection of application claims 1 and 2 as being obvious over Bennett in view of Green, Remcor argued that Bennett "does not ... have any means for *automatically conveying ice* " and that the means for conveying ice in Bennett is such that it "may be manually opened." Ex. D in Supp. of Defs.' Mot. for Summ.J., at 36. The Examiner, nevertheless, again rejected the claims. *Id.*, at pp. 43–44. In doing so, he noted that "automatic is defined as 'largely or wholly involuntary' " and that Bennett contemplated " 'means ... for automatically conveying ice' ". *Id.* at 44. In response to that rejection, plaintiff did not quarrel with the Examiner's stated definition of automatic. Instead, Remcor amended the claims to include an agitator and the claims were allowed. *Id.*, at 45–47. The parties here do not define what "automatic" means in the claims. As such, the court will not decide that on this motion.

Dependent claims 3, 5, 6, 7 and 8 include various further elements or limitations.[1] Claim 3 includes, as the conduit of Claim 1, a vertical tube extending between the upper and lower containers. Claim 5 includes the limitations that the ice pan be beneath the hopper and that a conduit exists between the two to allow ice to pass through. Claim 6 limits Claim 5 by specifying that the hopper has an annular trough. Claim 7 limits Claim

5 to the extent that the conduit must run vertically between the hopper and the ice pan. Lastly, Claim 8 adds that the combination of Claim 5 include an ice pan cover and that the conduit communicate at its lower end with the cover. Each of these dependent claims was allowed based on the additional features each included or by amending its independent claim. *See id.* at 35–48. For purposes of the present motion, defendants do not assert the obviousness of these claims.

## C. *Level of Ordinary Skill in the Pertinent Art*

The parties agree and propose that "the level of ordinary skill in the pertinent art in this case is a person having a Bachelor's degree in mechanical or chemical engineering and several years experience in the industry." *See* Mem. in Supp. of Defs.' Mot. for Summ.J., at p. 8 n. 8. The court does not disagree with this assertion.

## D. *Secondary Considerations*

Remcor offers evidence of the commercial success of its products developed pursuant to the claims of the '359 patents; of copying by competitors; of long felt need in the industry; and of failure of others to develop a workable device. *See, e.g.,* Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ.J., at 11–12; Ex. R, at 94; Ex. U, at 117; Ex. O, at 479–81; Ex. K, at 260–61; *see also* Updated Corrected Pl.'s Resp. to Defs.' Stmt. of Uncontested Facts, at 7–10, ¶¶ 1–29. Defendants did not directly respond to this evidence nor submit evidence contradicting this evidence. *See* Defs.' Reply to Pl.'s Corrected Stmt. of Additional Material Facts, at 1–11. Instead, defendants merely reassert that they have clearly demonstrated that plaintiff is estopped from denying obviousness. *See* Reply Mem. in Supp. of Defs.' Mot. for Summ.J., at 13–15. Because defendants have failed to contradict this evidence, any and all weight to be given to the secondary considerations must go to plaintiff.

---

1. Formerly dependent claim 2 of the '359 patent was incorporated into independent claim 1 of the '465 patent.

## II. *LEGAL ANALYSIS*

As determined, Weil, Bennett and Green together disclose most, or all, of the elements of the claims at issue. All combined, these prior art references disclose all of the elements of independent claim 4 of the '359 patents and all but one limitation of independent claims 1 and 9 of the '359 patents. Pursuant to 35 U.S.C. §§ 103 and 282, to determine whether this renders the '359 patents obvious, the defendants must demonstrate by clear and convincing evidence that the differences between the references and the claims at issue are such that the subject matter as a whole would have been obvious to a person with a Bachelor's degree in mechanical or civil engineering and a few years of experience in the field. 35 U.S.C. § 103.

In support of their motion, defendants first argue that plaintiff is estopped from denying that its claimed invention was obvious. Defendants argue that during the prosecution of the patent application, plaintiff conceded that its claims were obvious. During the application process, the Patent Examiner initially rejected the claims of the '359 patents because he found that incorporating a cold plate like that disclosed in the Green patent into a structure like that shown in the Bennett patent would be obvious. *See* Mem. in Supp. of Defs.' Mot. for Summ.J., at 11; Ex. D in Supp. of Defs.' Mot. for Summ. J., at 31–32. In response to the rejection of its claims based on obviousness due to the Green and Bennett patents, plaintiff attempted to traverse the Examiner's reasoning. Remcor argued that its invention was not obvious because Green and Bennett do not incorporate a cold plate, do not have any means for automatically conveying ice to the cold plate, and do not show separate means for dispensing ice from the storage compartment. *See* Ex. D in Supp. of Defs.' Mot. for Summ.J., at 36–37. The Examiner did not agree and again rejected the claims. *Id.*, at 43–44. The Examiner allowed application claim 3, however, which was a dependent claim of claim 1 and which included an agitator. *Id.* In response, Remcor incorporated application claim 3 into application claim 1 and cancelled application claim 3. Claim 1 was thus allowed but only with the added agitator element. Remcor did not attempt to traverse the Examiner's final rejection of application claim 1 as obvious over Bennett in view of Green. *Id.*, at 45–47.

According to defendants, this application history greatly narrows the issue before this court and estops plaintiff from denying obviousness. According to defendants, "the sole issue is whether the prior art failed to teach that an agitator could properly be incorporated into a structure like the combination of Bennett and Green." Mem. in Supp. of Defs.' Mot. for Summ.J., at 11. Furthermore, according to defendants, the Weil patent discloses the use of an agitator in a structure similar to that of the combination of Green and Bennett. Therefore, they argue, the '359 claims are obvious and Remcor is estopped from arguing otherwise. *Id.* at 11–12. Remcor responds first that the Weil patent, in addition to Green and Bennett, does not render its invention obvious because the Examiner reviewed and considered the Weil patent. *See* Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ.J., at 3. Second, Remcor differs with defendants' characterization of the differences between the prior art and the claimed invention. Lastly, Remcor argues that nothing in the prior art provides a suggestion or motivation to combine the references. *Id.*, at 6.

Remcor's first argument is rejected. A genuine issue of material fact exists as to whether or not the Examiner considered the Weil patent. In *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1459 (Fed.Cir.1984), the Federal Circuit Court of Appeals stated that the introduction of uncited art does not weaken the presumption of validity of a patent. The difference uncited art may make during litigation is that "the clear and convincing standard may more easily be met when such nonconsidered art is *more* pertinent than the cited art". *Lindemann*, 730 F.2d at 1459. "To the extent that the examiner's consideration of uncited art is material, the burden is on the challenger to show that the uncited art had *not* been considered." *Id.*, at 1460. The challenger may do this by showing "that the uncited art is more relevant than that cited". *Id.*

Based on the evidence presented, the court cannot determine whether or not the Examiner reviewed the Weil patent. First, the court considers the Weil patent more relevant than the cited art. Weil teaches the combination of an ice maker, ice dispenser, multiple ice storage bins, means for conveying ice between bins, and an agitator. The combination of these elements seems as or more pertinent to Remcor's goal than the "Ice Box" of Bennett or the "Water Cooler" of Green. Furthermore, as expressly contemplated in the Weil patent, it may be used in conjunction with a drink vending machine. *See* Weil Patent, Ex. H in Supp. of Defs.' Mot. for Summ.J., at col. 1, lines 25–32. On the other hand, the Weil patent was cited by number in the '359 application. The plaintiffs submitted an affidavit of the Examiner stating it was his general practice to review patents cited by number in the application (but without actually stating that he did review the Weil patent). *See* Ex. Z to Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ.J., at 2. Furthermore, defendants' patent law expert, a former Commissioner of Patents, testified in a deposition that examiners are trained to look up patents that are cited by number in applications. Ex. Y, *Id.,* at 22–23. The court, therefore, cannot determine whether or not, or to what extent, the Examiner reviewed the Weil patent. In any case, absent any specific documentation in the prosecution history regarding the Weil patent, the court does not find this fact particularly significant. *See Lindemann,* 730 F.2d at 1460 n. 5 (court not bound by examiner's evaluation of prior art).

Remcor next argues that defendants misstate the differences between the claims at issue and the prior art. This argument is similarly not dispositive. The court has viewed the scope of the claims at issue and the prior art based on all arguments made and materials submitted by both parties, as stated above.

Furthermore, Remcor is not estopped from denying that the claims were obvious. In support of this proposition, defendants cite *Graham,* 383 U.S. at 33, 86 S.Ct. at 702. *Graham* does not support this proposition. The doctrine of prosecution history estoppel, as stated in *Graham,* bars "a patentee from enforcing its claims against otherwise legally equivalent structures if those structures were excluded by claim limitations added in order to avoid prior art." *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 793 F.2d 1279, 1284, 230 U.S.P.Q. 45, 48 (Fed.Cir. 1986). As such, *Graham* limits the scope of the interpretation given to the claims based on what the patentee did to limit those claims during prosecution. *Graham* does not estop a patentee from asserting that what was ultimately allowed as a patent was not obvious. Therefore, Remcor may assert that its allowed claims are not obvious.

 Next, defendants' averment that the sole issue of obviousness is limited to whether or not the prior art taught the use of an agitator in a structure similar to the combination of Bennett and Green, is not accurate. When making the obviousness determination, the trier must view all the relevant prior art in view of the claims *as a whole.* 35 U.S.C. § 103. When a party claims that a combination of references renders a patented invention obvious, the prior art must provide a suggestion or motivation to combine the references. *See Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.* 21 F.3d 1068, 1072, 30 U.S.P.Q.2d 1377, 1379 (Fed.Cir.1994); *Northern Telecom Inc. v. Datapoint Corp.,* 908 F.2d 931, 934 (Fed.Cir.1990). Absent this suggestion or motivation, the mere existence of the individual elements at the time of invention does not render a patented combination of these elements obvious as a matter of law. Defendants ignore this requirement and assume that the combination of Green and Bennett is inherent. From this assumption, the defendants conclude that Weil teaches the use of an agitator in a similar structure and therefore the '359 claims are obvious. Defendants never assert a motivation or suggestion in the prior art to combine all three references. Under defendants' theory, any new combination of existing elements would be obvious. This is not an accurate analysis.

Remcor has offered evidence that nothing in the prior art suggested combining these prior art references. According to Remcor, the Green patent actually taught away from

the '359 claims because Green specifically states that the ice used to cool the dispensed beverage is not to come in contact with the dispensed beverage. Green Patent, Ex. E in Supp. of Defs.' Mot. for Summ.J., at col. 1, lines 18 to 23. Remcor also asserts that nothing suggests the use of a cold plate in the Weil device because Weil is specifically intended for under-the-counter installations. *See* Pl.'s Mem. of Law in Opp. of Defs.' Mot. for Summ.J., at 6–8 and n. 7. Whether or not this is entirely accurate (*see* Weil Patent, Ex. H in Supp. of Defs.' Mot. for Summ.J., at col. 1, lines 25 to 32 ("The object of the ... invention is ... an ... ice making and vending machine ... that may be constructed to facilitate a wide variety of installations, *e.g.*, on top of or inside a drink vending machine")), Remcor has raised a genuine issue of material fact as to whether or not the prior art offered a suggestion or motivation to combine prior art references to achieve the combination of elements of the claims of the '359 patents.

As determined above, the secondary considerations support this conclusion. As noted *supra*, Remcor has offered deposition testimony for the facts that it has enjoyed commercial success from its patented claims; that others, including defendants, have attempted to copy its claims; that the industry felt a need for such a device; and that others, including defendants, failed to develop such a workable device. These assertions tend to support the proposition that nothing in the prior art suggested the combination of elements in plaintiff's patented claims. *See Heidelberger*, 21 F.3d at 1072 (obviousness argument diminished when party asserting it "tried and failed to solve the same problem, and then ... adopted the solution that they are ... denigrating"). As such, a genuine issue of material fact exists as to whether or not anything suggested the combination of elements in the '359 claims.

### CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment is denied.