REMCOR PRODUCTS COMPANY,
Plaintiff,

v.

SCOTSMAN GROUP, INC.,
et al., Defendants.

No. 93 C 1822.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 1, 1994.

See also, —— F.Supp. ——.

Thomas D. Rosenwein, Schaefer, Rosewein & Fleming, Thomas R. Juettner, Michael Piontek, Steven Lee Underwood, Paul G. Juettner, Robert A. Lloyd, Juettner, Pyle & Lloyd, Chicago, IL, for plaintiff.

Richard Jerold Hoskins, Michael Louis Body, Stuart Irwin Graff, Kevin J. Byrne, Randall M. Whitmeyer, Schiff, Hardin & Waite, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff Remcor Products Co. charges that defendants Scotsman Group, Inc. and Booth, Inc. have infringed U.S. Patent No. 4,300,359 and U.S. Reissue Patent No. 34,565, both entitled "Cold Plate System for Ice Dispenser". In defense, defendants assert that plaintiff is judicially estopped from claiming infringement and that plaintiff's patents are unenforceable due to inequitable conduct. Before the court are plaintiff's Motion For Partial Summary Judgment and defendants' Cross–Motion For Summary Judgment seeking summary determination of both defenses.

### I. FACTS [1]

#### A. Judicial Estoppel Defense

In April 1991, IMI plc [2] ("IMI") and REM Holding Inc.[3] ("REM Holding") agreed to an acquisition plan whereby Remcor would be sold to IMI. Because of the nature and dollar value of the transaction, the proposed acquisition was subject to the notice provisions of the Hart–Scott–Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a ("H–S–R Act"). On June 21, 1991, REM

---

1. The facts pertaining to these motions are taken from Pl.'s Mem. Of Law In Supp. Of Its Mot. For Partial Summ. J. The citations to the Exhibits are to plaintiff's Exhibits in support of its motion. Defendants do not dispute the relevant facts as stated.

2. IMI plc is a British corporation. IMI owns several subsidiaries, including IMI America, Inc., which is now Remcor's parent corporation.

3. Prior to the acquisition, REM Holdings Inc. held 100% of the stock of Remcor.

Holding filed a "Notification and Report Form" with the Federal Trade Commission ("FTC") and the United States Department of Justice in compliance with the H–S–R Act. Ex. A. The Act provides for a thirty-day waiting period following the filing of the notification before the proposed transaction may be consummated. 15 U.S.C. § 18a(b). On June 26, the FTC acknowledged the filing and set a waiting period expiration date of July 25, 1991. Ex. B. During the waiting period, Mr. Robert Cook of the FTC telephone REM Holding's counsel and requested additional information related to the proposed transaction. Ex. C, Kaufmann Dep. 29–30. On July 17, 1991, Remcor's President and counsel had a telephone interview with Mr. Cook regarding the requested additional information. Ex. C, Kaufmann Dep. 37–41, 45. In a July 22 follow-up letter, REM Holding identified twelve manufacturers of ice-beverage dispensers who were competitors of Remcor. Remcor reserved its right to define an appropriate product market for antitrust analysis, however. Ex. F.

During the July 17 conversation and in the July 22 letter, Remcor told the FTC:

(a) the technology for ice-beverage dispensers was readily available to the industry;

(b) ice-beverage dispensers are commodity products which compete in a market in which there are many competitors; and

(c) all of Remcor's competitors had designed around the Remcor Patent.

Ex. D, Koeneman's Notes for FTC on Wednesday; Ex. E, Koeneman Dep. at 243–44, 248, 260, 408; Ex. F.

No further communications occurred. The FTC did not extend the waiting period. Ex. C, Kaufmann Dep. 28–29. The FTC did not initiate any proceedings to challenge the proposed acquisition. Ex. C, Kaufmann Dep. 28–29. There were no hearings. The FTC did not issue a decision or judgment, nor did it seek an injunction against the acquisition. The waiting period expired as scheduled on July 25, 1991. Ex. C, Kaufmann Dep. 29. IMI's acquisition of Remcor was subsequently consummated.

### B. *Inequitable Conduct Defense*

In the body of the specification of the Remcor patent, several prior art references were cited and disclosed as follows:

There is illustrated in the accompanying drawing an embodiment of a cold plate system for an ice dispenser which is presently contemplated as the best mode of carrying out the invention. As shown, an ice dispenser, indicated generally at 10, is conventionally comprised of a hopper, bin or tank 12 for storing a large mass of crushed, cracked, flaked or cubed ice, such as 50 pounds, a rotary impeller or agitator 14 driven by an electric motor 16, and means 18 for accommodating controlled discharge of ice from the lower end portion of the hopper through a discharge opening 20. The means 18, although not forming a part of the present invention, is highly desirable to enable convenient dispensing of ice in the hopper, and may take the form of any of the dispensing means disclosed in U.S. Patent Nos. 3,165,901, 3, 211,388 and 3,217,509, to which reference is made for a more detailed description.

Ex. G, Remcor Patent, col. 2, lines 42–58. Cited patent Nos. 3,211,338 and 3,217,509 are referred to here as the "Weil patents." Defendants argue that this disclosure of the Weil patents by Remcor was insufficient, intentional, and constitutes inequitable conduct.

## II. *DISCUSSION*

### A. *Judicial Estoppel*

"A litigant is forbidden to obtain a victory on one ground and then repudiate that ground in a different case in order to win a second victory". *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1427 (7th Cir.1993). "[T]he doctrine has been applied ... to proceedings in which a party to an administrative proceeding obtains a favorable order that he seeks to repudiate in a subsequent judicial proceeding". *Id.* at 1427. "However, ... the doctrine of judicial estoppel is not an absolute bar to obtaining legal relief on the basis of new information, even if inconsistent old information had gotten the party an advantage in some other proceeding." *Id.* at 1428. "[T]he objective of the doctrine ... is

not just to protect the party in the [subsequent proceeding, but] to prevent situations from arising in which one of two related decisions has to be wrong because a party took opposite positions and won both times". *Id.* at 1427–28.

 Plaintiff first argues that its "FTC Notification" was not sufficiently a judicial or quasi-judicial proceeding for the judicial estoppel doctrine to apply. We disagree. "The doctrine of judicial estoppel is intended to protect the courts". *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990). "The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any formulation or principle." *Id.* As such, the court does not agree with plaintiff's assertion that its dealings with the FTC could in no way invoke the doctrine of judicial estoppel. As stated, the doctrine exists to protect the integrity of the courts and must, if recognized at all, be applied with flexibility to achieve its purpose. Dealing with an administrative agency, such as the FTC, pursuant to a statutory scheme as a pre-condition to achieving some desired result qualifies as sufficient administrative proceedings to apply the doctrine of judicial estoppel.

*Chaveriat* recognizes as much. In *Chaveriat*, a developer purchased a tract of land which had been contaminated by gasoline. *Id.* at 1423. To obtain Illinois Environmental Protection Agency approval for a cleanup plan, the developer represented that the site was contaminated only with unleaded gasoline. *Id.* The IEPA approved the clean-up plan. *Id.* In subsequent litigation with the party allegedly responsible for the contamination, plaintiff alleged that the land was contaminated with diesel fuel as well as gasoline. *Id.* at 1427. On appeal, the Seventh Circuit proceeded as though, without expressly holding, the doctrine of judicial estoppel could apply to such administrative proceedings. *Id.*

A similar situation exists here. In order to effectuate a merger between plaintiff and IMI, plaintiff, as required by statute, notified the FTC. In the process of carrying out its official functions, the FTC made certain informational requests of plaintiff. In re-

sponse, plaintiff made the statements defendants assert give rise to judicial estoppel. In this scenario, judicial estoppel may arise.

Plaintiff's second contention is equally unpersuasive. Plaintiff asserts that its dealings with the FTC did not result in a "judgment or its administrative equivalent". Pl.'s Mem. In Reply To Defs.' Opp., at 3. Thus, plaintiff argues, the doctrine of judicial estoppel does not apply. *Id.* (citing *Patz v. St. Paul Fire & Marine Ins. Co.,* 15 F.3d 699 (7th Cir.1994) and *Water Technologies Corp. v. Calco Ltd.,* 850 F.2d 660 (Fed.Cir.1988)). We disagree. The cases cited by plaintiff are inapposite. *See Patz,* 15 F.3d at 702–703 (defendant not judicially estopped from asserting argument A on appeal, after having asserted grounds A and B, alternatively, at trial and losing); *Water Technologies,* 850 F.2d at 665 (a patent licensee plaintiff, who was previously a defendant in the same case, not judicially estopped from asserting contrary position of invalidity after changing sides of lawsuit). Because both *Patz* and *Water Technologies* discuss the doctrine of judicial estoppel in terms of former and subsequent *judicial* proceedings, neither sheds light on the definition of the "administrative equivalent" of a judgment.

As stated *supra, Chaveriat* persuades this court that the result reached by plaintiff and IMI before the FTC is sufficient to apply the doctrine of judicial estoppel to subsequent judicial proceedings. As noted, in *Chaveriat* the Seventh Circuit held the doctrine applicable to a request of the Illinois Environmental Protection Agency for approval of a clean-up plan. *Chaveriat,* 11 F.3d at 1423. Here, the H–S–R Act requires that, prior to acquiring the voting shares of another (with some exceptions), the acquirer must file notification of such pursuant to subsection (d)(1) and the "waiting period" must expire. 15 U.S.C. § 18a(a). According to subsection (d) of the Act, the FTC "shall require the notification ... be in such form and contain such documentary material and information ... as is necessary ... to enable the [FTC] ... to determine whether such acquisition may, if consummated, violate the antitrust laws". 15 U.S.C. § 18a(d)(1). The notification and filing requirements of the FTC exist, therefore, so that that regulatory body may determine

if the planned acquisition violates the anti-trust laws. To say then, as Remcor does here, that judicial estoppel cannot apply because the FTC merely waited for the waiting period to expire is unpersuasive. Ironically, this is belied by the fact that the FTC, during the waiting period, requested additional information from plaintiff to perform its analysis. *See* Pl.'s Mem. Of Law In Supp. Of Its Mot., at 1–3. Plaintiff's responses to the FTC's request are the subject of defendants' estoppel defense. Presumably, the FTC relied on plaintiff's responsive statements in not determining that the planned acquisition was violative of the anti-trust laws. *See Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 939 (Fed.Cir.1990) ("It is presumed that public officials do their assigned jobs"). As such, Remcor achieved a favorable result from an administrative body based on assertions Remcor made to that body in carrying out its statutorily mandated function. We believe this sufficiently constitutes an administrative equivalent to a judgment such that judicial estoppel could apply.

■ We find Remcor's final contention persuasive, however, that its statements to the FTC are not irreconcilable with its position in this case. The doctrine of judicial estoppel only applies "where a clearly inconsistent position is taken". *Cassidy,* 892 F.2d at 641 (citing *Himel v. Continental Ill. Nat'l Bank,* 596 F.2d 205, 210–11 (7th Cir.1979), and *Eagle Foundation v. Dole,* 813 F.2d 798, 810 (7th Cir.1987)). We believe Remcor's statements to the FTC can be reconciled with its position in this litigation. The generalized assertions Remcor made to the FTC, as stated *supra* at pp. 2–3, are not clearly inconsistent with their positions in this case. The prior statements may be impeaching but do not warrant the harsh sanction of judicial estoppel. A victory for Remcor in this case would not necessarily render the decision of the FTC (or of this court) incorrect. *See Chaveriat,* 11 F.3d at 1427. Furthermore, even if Remcor's current position were viewed as irreconcilable with its position before the FTC, new information very well may have contributed to its new stance. *See* Pl.'s Mem. Of Law In Supp. Of Its Mot. For Partial Summ. J., at 8–10; *Chaveriat,* 11 F.3d at 1428. Remcor's Motion For Partial

Summary Judgment on defendants' Defense of judicial estoppel is granted. Defendants' Cross–Motion For Summary Judgment on its Defense of judicial estoppel is denied.

## B. *Inequitable Conduct*

■ The parties next argue that summary judgment should be granted on defendants' defense of inequitable conduct. Defendants aver that plaintiff committed inequitable conduct by misleading the Patent and Trademark Office as to the relevance of two of its own prior art patents: Pat. No. 3,217,509 entitled "Ice Making and Vending Apparatus" and Pat. No. 3,211,338 entitled "Ice Handling Apparatus". Defendants argue that both patents are material to the claims of the patents at issue in this case and that plaintiff failed to "properly disclose and explain the relevance of the Weil patents" during the application process and during the reissue process. *See* Defs.' Mem. In Opp. To Pl.'s Mot. For Partial Summ. J. And In Supp. Of Defs.' Cross–Motion For Summ. J., at 8–10 (citing 37 C.F.R. § 1.98 (1979 through 1981) (requiring explanation of relevance of all material prior art)). Remcor counters that it did not act inequitably because the PTO Examiner who examined the application reviewed the Weil patents. *See* Pl.'s Mem. Of Law In Supp. Of Its Mot. For Summ. J., at 11–15.

The only disclosure Remcor made of the Weil patents to the PTO during prosecution of its patent application is a reference to the patent numbers of the Weil patents as noted *supra* at pp. 3–4. *See* U.S. Pat. No. 4,300,-359, col. 2, lines 48 to 54. Defendants contend that this disclosure misstates the materiality of the cited patents. Defendants further contend the misstatement was intentional. *See* Defs.' Mem. In Opp. To Pl.'s Mot. For Partial Summ.J. And In Supp. Of Defs.' Cross–Motion For Summ. J., at 8–15.

■ Inequitable conduct occurs when a party fails to disclose material information to the PTO with an intent to deceive. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988). "To be guilty of inequitable conduct, one must have intended to act inequitably". *Id.* The

parties have raised genuine issues of material fact regarding Remcor's intent and of the extent of disclosure of the Weil patents. First, defendants have shown that Robert Koeneman, the inventor of the subject matter of the claims at issue, knew of the Weil patents when the Remcor patent application was filed. Defs.' Mem. In Opp., at 11. Defendants also note that the attorney who prosecuted the Remcor patent application knew at least enough about the Weil patents to cite to them in the patent specification, and that, soon after filing the application, represented to the PTO in another matter that he had "carefully studied" the Weil '338 patent. The parties, therefore, have raised a genuine issue of material fact at least as to Remcor's intentions regarding its disclosure of the Weil patents.

Remcor's argument that its conduct is irrelevant because the Examiner reviewed the Weil patents fails. The court cannot determine on this record whether or not the Examiner actually reviewed the Weil patents. *See Remcor Products Co. v. Scotsman Group, Inc.,* 860 F.Supp. 568, 574 (N.D.Ill. 1994) (order on defendants' motion for summary judgment). Furthermore, the court cannot say for certain that whether or not the Examiner reviewed the Weil patents is dispositive. *Compare A.B. Dick Co. v. Burroughs Corp.,* 798 F.2d 1392, 1396–1400 (Fed. Cir.1986) (inequitable conduct occurred although Examiner independently discovered and reviewed articles patentee intentionally withheld), *with Halliburton Co. v. Schlumberger Tech. Corp.,* 925 F.2d 1435, 1440 (Fed. Cir.1991) ("if the references found by [the] Examiner ... more closely related to the [patentee's] applications than the uncited art" no inequitable conduct occurs); *see also Northern Telecom,* 908 F.2d at 938 ("Although lapse on the part of an examiner does not exculpate an applicant whose acts are intentionally deceptive, ... any doubt as to whether the examiner lapsed in his duty does not increase the burden on the applicant. Nor does the applicant's duty of candor replace the examiner's duty to examine the claims."). Therefore, Remcor's argument fails. The parties' motions for summary judgment on defendants' defense and counter-claim of inequitable conduct are denied.

### *CONCLUSION*

For the foregoing reasons, plaintiff's Motion for Partial Summary Judgment is granted in part and denied in part. Defendants' Cross–Motion For Summary Judgment is denied. The portion of defendants' Fifth Defense asserting judicial estoppel is stricken.