**HEIDELBERGER DRUCKMASCHINEN AG, Plaintiff/Appellant,**

v.

**HANTSCHO COMMERCIAL PRODUCTS, INC. and Rockwell Graphics Systems, Inc., Defendants/Cross–Appellants.**

Nos. 93–1357, 93–1358.

United States Court of Appeals, Federal Circuit.

April 5, 1994.

Rehearing Denied; Suggestion for Rehearing In Banc Declined June 1, 1994 in No. 93–1357.

David H.T. Kane, Atty., Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele and Richard, New York City, argued for plaintiff/appellant. Also on the brief was Lerner & Greenberg, P.A., of Hollywood, FL.

David A. Tamburro, Atty., Nies, Kurz, Bergert & Tamburro, Arlington, VA, argued for defendants/cross appellants. Also on the brief was John D. Nies.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Heidelberger Druckmaschinen AG appeals from the decision of the United States District Court for the Southern District of New York,[1] holding United States Patent No. 4,509,939 (the '939 patent) invalid for obviousness. Hantscho Commercial Products and Rockwell Graphics Systems cross-appeal from the district court's refusal to find the '939 patent unenforceable due to inequitable conduct before the United States Patent and Trademark Office (the PTO). We reverse the determination of invalidity, affirm the ruling of no inequitable conduct, and remand for further proceedings.

### The Patented Invention

The '939 patent is directed to a "folding device for web-fed rotary printing presses", inventor Hans Müller. The device, called a "chopper," is used in a web-fed printing press to fold sheets of printed matter as they emerge from the press. Heidelberger, the assignee of the '939 patent, is a manufacturer of printing presses that embody the patented chopper. Hantscho is also a manufacturer of printing presses, including presses embodying the chopper that is charged with infringement.

In the operation of a chopper, the printed material is passed over a pair of rollers that rotate in opposite directions. The axes of the rollers lie in a horizontal plane and are parallel to the direction in which the fold is to be made. When the printed material is moved into position on top of the rollers, a blade depresses the center of the material into the space between the rollers, which nip the material and draw it between them, forming a fold along the line at which the blade contacted the material.

The patented improvement is directed to the mechanism and motion of the chopper blade. Some prior art choppers, such as that described by Richter (United States Patent No. 4,239,201), were operated by circular driving disks that moved the blade in a circular motion; this required that the pinch rollers also be moved back and forth along their axes so that the blade and rollers would come together without relative axial motion, which could tear or distort the printed material. Other prior choppers moved vertically but required the use of guides, which slowed the action of the blade and occasionally dripped lubricant on the printed material.

According to the '939 patent, the chopping blade is mounted on a drive mechanism that is designed to provide vertical motion to the chopper blade without the use of guides. This drive mechanism comprises two disks at each end of the chopper blade. One disk is mounted on the machine, and the second is mounted on the first disk but offset from its center. The blade is then mounted on the second disk at a point similarly offset from its center. The two disks are geared to rotate at the same speed but in opposite directions. When the disks are aligned the blade moves vertically without any horizontal motion, and no guides are needed to constrain the motion.

1. *Heidelberger Druckmaschinen AG v. Hantscho Commercial Products, Inc.,* 87–CV–4522 (S.D.N.Y. Mar. 15, 1993).

The '939 chopper provided faster, more effective, neater, and cleaner folding than was previously available. Commercial success ensued. Hantscho conceded infringement, but asserted the defenses of patent invalidity based on obviousness and unenforceability.

## Obviousness

■ The district court held the '939 patent invalid for obviousness. 35 U.S.C. § 103. Obviousness is a question of law based upon underlying factual determinations. *Panduit Corp. v. Dennison Manufacturing Co.*, 810 F.2d 1561, 1565–68, 1 USPQ2d 1593, 1594–97 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). Relevant underlying facts are (1) the scope and content of the prior art; (2) the differences between the prior art devices and the claimed invention; (3) the level of ordinary skill in the art; and (4) objective considerations such as commercial success, long felt need, failure of others, and copying. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). We review the district court's factual determinations for clear error; the ultimate determination of obviousness, based on these facts, is reviewed for correctness. *Panduit v. Dennison*, 810 F.2d at 1565, 1 USPQ2d at 1594–95.

■ The issue at trial was whether certain references constituted prior art and if so, whether it would have been obvious to combine their teachings in order to produce the Müller device. The prior art primarily comprises references that are within the field of the inventor's endeavor. References that are not within the field of the inventor's endeavor may also be relied on in patentability determinations, and thus are described as "analogous art", when a person of ordinary skill would reasonably have consulted those references and applied their teachings in seeking a solution to the problem that the inventor was attempting to solve. *In re De-*

*minski*, 796 F.2d 436, 442, 230 USPQ 313, 315 (Fed.Cir.1986); *In re Wood*, 599 F.2d 1032, 1036 (CCPA 1979). Whether a reference is "analogous art" is a question of fact, *Panduit*, 810 F.2d at 1568 n. 9, 1 USPQ2d at 1597 n. 9, and is part of the analysis of the scope and content of the prior art.

During the prosecution of the application for the Müller '939 patent, the patent examiner had rejected the application as obvious over Richter's U.S. Patent No. 4,239,201 in light of U.S. Patent No. 2,309,047 to Culbertson. As discussed *supra*, Richter used circular discs to drive a chopper: without dispute this was a quite different mechanism from that used by Müller. Culbertson shows a form of the geared double offset circle drive mechanism that Müller used for the chopper, but that was used by Culbertson to convert reciprocating motion to rotary motion, or the converse, as a replacement for the crank and piston in machines such as engines, compressors, and pumps. Müller argued to the patent examiner that the Culbertson reference was not in the same or an analogous field of art, and that Culbertson contained no suggestion that this known drive mechanism could be applied to provide the vertical reciprocating motion of a chopper as used to fold material in printing presses. The examiner agreed, and withdrew the rejection.

At the trial before the district court Hantscho pressed the same argument, augmented with two additional references showing the type of drive mechanism shown in Culbertson: British Patent No. 1,427,739, and a book entitled *Ingenious Mechanisms for Designers and Inventors* (Franklin D. Jones ed., 1978 ed.) (1930). Both references show the geared double offset circle drive as a mechanism for converting rotary to reciprocating motion, the British Patent using it in a method for deforming metal sheets, and *Ingenious Mechanisms* using it in the compressor of an air-driven drill.

■ The district court found that the new references and the previously cited Culbertson reference were all analogous art and would have been looked to by one of ordinary skill at the time the invention was made. The court concluded that *Ingenious Mecha-*

*nisms,* in combination with the Richter patent, rendered the Müller invention obvious.[2]

As the district court correctly observed, in order to determine whether a reference is reasonably pertinent to the inventor's field of endeavor, one looks to, among other things, the problem confronting the inventor. *Orthopedic Equipment Co. v. United States,* 702 F.2d 1005, 1009, 217 USPQ 193, 196 (Fed.Cir.1983). The district court recognized the need for a clean and controlled chop, and the particular need for precision and high speed, for the chopper was a rate-controlling element in the operation of the printing press. However, the court identified no reference that taught or suggested that this known double offset drive might be adapted to printing press choppers.

■ When the patented invention is made by combining known components to achieve a new system, the prior art must provide a suggestion or motivation to make such a combination. *See Northern Telecom Inc. v. Datapoint Corp.,* 908 F.2d 931, 934, 15 USPQ2d 1321, 1323 (Fed.Cir.), *cert. denied,* 498 U.S. 920, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990); *In re Geiger,* 815 F.2d 686, 688, 2 USPQ2d 1276, 1278 (Fed.Cir.1987) (obviousness can not be established by combining pieces of prior art absent some "teaching, suggestion, or incentive supporting the combination"). There is nothing in the prior art to lead a person of ordinary skill to the combination of the structures shown in these references to design a high-speed chopper for use in rotary printing presses, other than the hindsight knowledge of Müller's construction. *See Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1143, 227 USPQ 543, 551 (Fed.Cir.1985). Indeed, the several prior art choppers were encumbered by limitations

and disadvantages that had not previously been overcome. The motivation to combine references can not come from the invention itself. *See In re Oetiker,* 977 F.2d 1443, 1447, 24 USPQ2d 1443, 1446 (Fed.Cir.1992).

The district court found that the Heidelberger presses employing the patented chopper enjoyed "considerable commercial success" and met a long-felt need that others, including Hantscho, had tried and failed to meet. Such objective considerations are a useful guide in determining how a person of ordinary skill in the field would have viewed the patented invention at the time the invention was made. *Continental Can Co. U.S.A., Inc. v. Monsanto Co.,* 948 F.2d 1264, 1273, 20 USPQ2d 1746, 1752 (Fed.Cir.1991); *Stratoflex v. Aeroquip,* 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed.Cir.1983). Indeed, the litigation argument that an innovation is really quite ordinary carries diminished weight when offered by those who had tried and failed to solve the same problem, and then promptly adopted the solution that they are now denigrating.

■ Considering the absence of suggestion in the prior art leading to this combination, along with the generally non-analogous fields of the prior art, and giving due weight to the objective factors, we conclude that the district court erred in holding the '939 patent invalid for obviousness.

### Inequitable Conduct

Hantscho's charge of inequitable conduct was based on Heidelberger's inclusion in the '939 patent of claims to a schematic gearing diagram, shown in patent Figure 4, that was described in the specification as providing an alternative drive mechanism but that

---

**2.** There was extensive discussion before the district court, and before us, of the significance of the withdrawal by Heidelberger of the corresponding European patent application after the European examiner rejected the application based primarily on the *Ingenious Mechanisms* reference. Hantscho states that this established the unpatentability of the device, and that Heidelberger so recognized. Heidelberger responds that it decided not to press prosecution of the European patent since its German, Japanese, and United States patents were meanwhile allowed, and made no concession of unpatentability.

The weight that the district court appeared to place on the European examiner's rejection was not appropriate. We take notice of the fact that the theories and laws of patentability vary from country to country, as do examination practices. Caution is required when applying the action of a foreign patent examiner to deciding whether the requirements of 35 U.S.C. § 103 are met under United States law, for international uniformity in theory and practice has not been achieved.

was in fact inoperative. Claims 3 and 4 of the patent, which were based on Figure 4, were disclaimed by Heidelberger early in the litigation. Hantscho's argument is that claims 3 and 4 should have been disclaimed sooner, and indeed should have been withdrawn before patent issuance, for Heidelberger learned of the defect in Figure 4 during prosecution of the European patent. At that time the United States patent had been allowed but had not issued. Heidelberger did not inform the examiner of the defect or act promptly to remedy it. This failure, Hantscho argues, constitutes inequitable conduct and renders the entire patent unenforceable.

 A ruling of inequitable conduct requires that the threshold facts of materiality and intent be established. The information withheld from the examiner must be material to patentability, and it must have been withheld with the intent to deceive or mislead the examiner. When these factual predicates are established, the determination of inequitable conduct is within the sound discretion of the trial court. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (*en banc*). The district court's factual determinations of materiality and intent are reviewed for clear error. *Id.* at 872, 9 USPQ2d at 1388–89. On the found facts, the determination of unenforceability is reviewed for abuse of discretion. *Id.* at 876, 9 USPQ2d at 1392.

 The district court found that there was no intent to deceive or mislead the patent examiner. Heidelberger's German patent agent, Mr. Bialek, testified that the information was not provided to the United States examiner through inadvertence. Although the '939 patent had not yet issued when he learned of the error in Figure 4, Mr. Bialek explained that prosecution of the United States application had long been completed, and it did not occur to him to inform the examiner. The trial judge found the witness credible and the explanation plausible. We discern no clear error in this finding of the factor of intent. Thus we affirm the district court's determination that inequitable conduct in the prosecution of the '939 patent had not been shown.

*Summary*

The portion of the district court's judgment holding that the '939 patent is invalid for obviousness is reversed. The portion of the judgment holding that there was not inequitable conduct in the prosecution of the '939 patent is affirmed. The case is remanded for further proceedings.

*REVERSED IN PART, AFFIRMED IN PART, AND REMANDED*