**LIBERTY LEATHER PRODUCTS CO., INC., Plaintiff,**

v.

**VT INTERNATIONAL LTD., Defendant.**

No. 94 Civ. 7857 (CBM).

United States District Court,
S.D. New York.

July 27, 1995.

Ezra Sutton, P.A., by Ezra Sutton, Woodbridge, NJ, for plaintiff.

Schweitzer Cornman & Gross by Michael A. Cornman, New York City, for defendant.

### MEMORANDUM OPINION ON MOTION FOR PARTIAL SUMMARY JUDGEMENT

MOTLEY, District Judge.

## I. BACKGROUND.

This case for patent infringement centers on the sort of dispute over a mere improvement in gadgetry from which the United States Supreme Court sought to liberate the Federal District Courts with its opinion in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Plaintiff Liberty Leather Products Co., Inc. ("Leather") is a New York corporation with its principal place of business at 165 Classon Avenue in Brooklyn, New York. Defendant VT International Ltd. ("VT") is a New York corporation with its principal place of business at 295 Fifth Avenue in New York City, New York. Leather is the owner of United States Patent No. 5,291,976 (the "Leather Patent") which covers an improvement in luggage. Leather contends that VT has knowingly, intentionally, and willfully made, offered for sale, and sold a luggage product which infringes the Leather Patent. Leather is seeking an injunction, an accounting for profits and damages, the trebling of said award, and interest, attorneys's fees, and costs.

Defendant has filed a motion for partial summary judgement on the issue of obviousness.[1] The court heard oral argument on the motion on June 29, 1995. As discussed below, VT has successfully demonstrated that Leather's alleged invention would have been obvious, in light of the prior art, to a person having ordinary skill in the pertinent art. Therefore, Defendant's motion is granted.

    A. The Invention Covered by the Leather Patent.

As described by Leather itself, the alleged invention is an improved wheeled suitcase

---

1. The parties have also briefed the issue of anticipation. However, because the court ordered the parties to address this motion to the issue of obviousness only, and because the motion can be resolved on this issue alone, this Memorandum Opinion does not address the parties's arguments that speak to anticipation.

and luggage support structure which includes (1) a rectangular frame with two horizontal and two vertical members; (2) wheels on the lower horizontal members; (3) a pull-up handle connected to the rectangular frame; and (4) a wedging member, preferably frustoconical in shape, frictionally received in a bore which keeps the pull-up handle in a fully extended position. According to the Leather Patent, the suitcase can be attached to the rectangular frame either permanently by the use of screws or rivets to fasten the suitcase to the frame or temporarily by the use of straps or elastic cords to hold the suitcase in place. *See* Leather Patent, col. 3, lines 19–30.

Leather claims to have obtained several advantages from this design. The use of the wedging member frictionally received in a bore allows a user to engage and disengage the pull-up handle with only one, rather than two, hands. No space in the suitcase is used by the wheels, rectangular frame, or pull-up handle. The combination is easily manufactured by placing the wheels on the lower horizontal member of the rectangular frame and connecting the pull-up handle to the rectangular frame, rather than attaching these parts to the suitcase itself. Finally, since the wedging member frictionally engages a bore to hold the handle fully extended, as the wedging member wears, it is forced further into the bore, thus giving this mechanism a longer useful life than other locking mechanisms.

### B. The Prior Art.

VT directs the court to a wide array of prior art references. The first is United States Patent No. 4,995,487 for a wheeled suitcase and luggage support invented by Robert V. Plath (hereinafter the "Plath Patent"). The Plath Patent covers "a rollaboard, carry-on size suitcase with built in wheels and a retractable, friction-locking handle." Plath Patent, col. 1, lines 7–9. As VT readily concedes, neither the handle nor the wheels of the Plath device are part of an external cart and both of these elements invade the interior of the suitcase carrying space. *See* Plath Patent, col. 1, lines 45–60. However, a critical feature of the Plath Patent is the nature of its handle-locking mechanism:

To effect extension of the handle, gripping means may be grasped and pulled upwardly. When the handle has reached its maximum extension, the offset guide means wedge the lower end segment of rod against sleeve and brushing means, binding said handle frictionally in position for use.... To retract the handle, downward pressure is applied to the gripping means sufficient to overcome the friction force of rod against the inner through-bore of brushing means and sleeve, forcing the offset guide means downward and out of its jammed position at the head of sleeve and into the lower area ... of sleeve member.

Plath Patent, col. 3, lines 47–65 (numerical references excluded).

Another important prior art reference is United States Patent No. 3,998,476 which covers a portable luggage carrier with telescoping handle invented by Eugene Anthony Kazmark, Sr. (hereinafter the "Kazmark Patent"). As is readily apparent from the figures accompanying this patent, Kazmark's device is a cart which is intended to be attached externally to a piece of luggage. The vertical elements of this cart are each comprised of a lower, intermediate, and upper telescopically related tube. Kazmark Patent, col. 2, lines 23–31. The upper tubes are horizontally connected by a gripping handle. Kazmark Patent, col. 2, lines 28–30. The vertical elements can be locked in their fully extended position by the use of a pair of locking mechanisms on each element. These locking mechanisms each consist of a spring-loaded button-shaped element which is forced through a matching hole in the given tube when the vertical elements are extended. Kazmark Patent, col. 2, lines 32–63. Operation of these mechanisms to collapse the vertical elements into their shortest extension requires the use of both hands. Kazmark Patent, col.3, lines 17–68; col. 4, lines 1–29. Finally, the wheels of this cart are attached to an axle which is part of the base of the cart. Kazmark Patent, col. 1, lines 63–66.

A third reference is United State Patent No. 5,024,455 which covers a luggage cart

invented by Ray B. Schrecongost (hereinafter the "Schrecongost Patent"). This patent discloses an external rectangular frame with two horizontal members, two vertical members, wheels attached to an axle on the base of the frame, and a telescopically extendable U-shaped handle. *See* Schrecongost Patent, col. 3, lines 21–33. The locking mechanism for the handle uses spring-loaded detents to engage either of two pairs of notches in the U-shaped handle to hold the handle in either the extended or the collapsed position. Schrecongost Patent, col. 5, lines 36–68; col. 6, lines 1–4. Brackets of varying sizes can be attached to the upper and lower horizontal members to be used to secure a piece of luggage to the frame either temporarily or permanently. Schrecongost Patent, col. 3, lines 33–41; col. 5, lines 3–35.

Other references cited by the Defendant include United States Patent No. 4,743,038 which covers a carrying case and cart invented by Jay E. Myers, et al. (hereinafter the "Myers Patent"); United States Patent No. 4,340,132 which covers a suitcase and cart assembly invented by Juan F. Cerna (hereinafter the "Cerna Patent"); and United States Patent No. 3,842,953 which covers wheelmounted luggage invented by Paul Ferdinand Royet (hereinafter the "Royet Patent"). Both the Myers Patent and the Cerna Patent cover an external, wheeled cart and a piece of luggage that is specifically adapted to be removably attached to the cart.

## II. The Standard for Summary Judgement Under Rule 56.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted when the court concludes from the record before it that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The mere existence of disputed facts will not preclude entry of summary judgment. *See, e.g., Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Cubby, Inc. v. CompuServe Inc.,* 776 F.Supp. 135, 138 (S.D.N.Y.1991); *United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assoc.,* 755 F.Supp. 1195, 1199 (S.D.N.Y.1989). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Herbert Constr. Co. v. Continental Ins. Co.,* 931 F.2d 989, 993 (2d Cir.1991).

Once the moving party meets its burden by "pointing out the absence of evidence to support the nonmovant's claims," *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)), the burden shifts to the nonmoving party to establish that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511.

The nonmoving party must then produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510; *see also Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party may not simply rely upon "[s]peculation, conclusory allegations, and mere denials ... to raise genuine issues of [material] fact." *National Westminster Bank v. Ross,* 676 F.Supp. 48, 51 (S.D.N.Y.1987); *see also Delaware & Hudson Ry. Co. v. Conrail,* 902 F.2d 174, 178 (2d Cir.1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). Rather, the nonmoving party "must provide 'concrete particulars' showing that a trial is needed, and '[i]t is not sufficient merely to assert a conclusion without supplying supporting argument or facts.'" *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (citation omitted); *see also Resource Developers, Inc. v. Statue of Liberty–*

*Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir.1991).

## III. The Applicable Standards for Determining Obviousness.

The requirement of non-obviousness for a patent is provided in 35 U.S.C. § 103 which states in pertinent part that:

[a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103 (1994).

■ The standards for applying this statute have been made abundantly clear. "Obviousness is a question of law based upon underlying factual determinations. Relevant underlying facts are (1) the scope and content of the prior art; (2) the differences between the prior art devices and the claimed invention; (3) the level of ordinary skill in the art; and (4) objective considerations such as commercial success, long felt need, failure of others, and copying." *Heidelberger Druckmaschinen v. Hantscho Commercial Products*, 21 F.3d 1068, 1071 (Fed.Cir.1994) (citations omitted). Where the claimed invention is a new combination of previously invented components, the court "must determine ... whether it would have been obvious to make the *combination.*" *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1575 (Fed.Cir.1984) (emphasis in original). "The starting place for determining obviousness is ... with 'the inventor working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him.'" *Id.* at 1576. *See also Heidelberger Druckmaschinen*, 21 F.3d at 1072 (holding that such a combination is obvious only when the prior art "provide[s] a suggestion or motivation to make such a combination"); *In re Beattie*, 974 F.2d 1309, 1311 (Fed.Cir.1992) (combination is obvious if the motivation or suggestion to combine "is provided by the prior art

taken as a whole"). However, the court is not permitted "simply to engage in a hindsight reconstruction of the claimed invention, using the applicant's structure as a template and selecting elements from references to fill the gaps." *In re Gorman*, 933 F.2d 982, 987 (Fed.Cir.1991).

### A. The Scope and Content of the Prior Art.

■ As the above discussion of the facts of this case makes clear, the prior art references cited by the Defendant disclose virtually all of the elements of Plaintiff's device. The specifications of the Plath Patent state expressly that its handle-locking mechanism employs an elements that wedges into an inner through-bore where friction force binds it into a locked position. The passage quoted above from this patent also suggests quite clearly that this locking mechanism can be operated by the use of only one hand. That one-handed operation of the Plath locking mechanism is, indeed, quite possible was demonstrated by VT in open court. (R. at 6–7, 54–55.) The Kazmark Patent discloses an external luggage cart with wheels on an axle that is attached to the base of the cart. The Schrecongost Patent discloses an external cart comprised of a rectangular frame with wheels attached to an axle on the base of the frame. Moreover, Schrecongost discloses a means by which brackets can be used to attach luggage either permanently or temporarily to the frame. Finally, both the Cerna Patent and the Myers Patent disclose an external, wheeled cart with a piece of luggage that is specifically adapted to be removably attached to the cart.

### B. The Differences Between the Prior Art Devices and the Claimed Invention.

Plaintiff relies principally on two key differences between his claimed invention and the prior art references. First, Plaintiff points out that while his device employs wheels that are attached to the lower horizontal member of the rectangular frame of the cart, several of the prior art devices attached the wheels to a separate axle which

in turn is attached to the frame. This difference is, at best, trivial.

The second difference concerns the shape and properties of the wedging element in Leather's locking mechanism. Leather puts great weight on this point and offers, as expert testimony, the declarations of a professor of English and a 35–year veteran luggage repairman. According to Plaintiff, the wedging element in the Leather Patent is thick at one end, tapers to a thin edge at the other, and tightens when pulled into the bore. This element is preferably frustoconical in shape. Unlike this device, the Plath Patent relies on a wedging element of a different shape. Indeed, the shape of the element in Plath falls outside of the definition of a wedge offered by Plaintiff's expert on the English language. Leather points out that as the Plath element wears down from use, its fit loosens and it gradually becomes less effective as a locking device. By contrast, Leather contends that as the frustoconical element in its locking device wears down, it is simply pulled further into the bore, thus providing a longer useful life for the locking mechanism. This is arguably a more significant difference than the matter of the placement of the wheels. Nevertheless, in light of Plath, this is not enough to enable Leather to overcome the obviousness threshold.

C. The Level of Ordinary Skill in the Art.

"Probative of the required level of skill in the art are factors such as the educational level of the inventor, educational level of those who work in the industry . . ., and the sophistication of technology involved. . . ." *Ryko Mfg. Co. v. Nu–Star, Inc.,* 950 F.2d 714, 718 (Fed.Cir.1991). Neither of the parties has addressed this issue in any detail. Leather is silent on this issue, but its use of a luggage repair person is suggestive of its views. VT proposes that the applicable level is that of a college graduate having average technical knowledge and five years of experience in the luggage industry.

D. Objective Considerations Such as Commercial Success.

"Objective evidence such as commercial success, copying, or long-felt need, is relevant, and when present must be considered." *Glaverbel Societe Anonyme v. Northlake Marketing,* 45 F.3d 1550, 1555 (Fed.Cir. 1995). *See also Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1380 (Fed. Cir.1986) (same), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987). However, a party relying on this sort of evidence must show some sort of nexus between the merits of the claimed invention and the evidence offered. *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1539 (Fed.Cir.1983). Leather contends that the commercial success of its product demonstrates that its invention was not obvious. However, the only evidence Leather puts forth is the unsupported affidavit of the inventor of the Leather Patent. This is insufficient to meet the nexus requirement.

## IV. Plaintiff's Other Arguments.

Plaintiff offers two additional arguments against the granting of summary judgment. Neither is adequate. First, Leather makes much of the fact that its position is supported by expert testimony while the Defendant's position is not. Leaving aside questions about the qualifications of Plaintiff's experts, Leather misunderstands the amount of weight that a court is required to give to such testimony in a case of this nature. The Federal Circuit has explained that "[c]laim interpretation involves a review of the specification, the prosecution history, the claims . . . and, *if necessary,* other extrinsic evidence, such as expert testimony." *Texas Instruments v. United States Int'l Trade Comm'n,* 988 F.2d 1165, 1171 (Fed. Cir.1993) (emphasis added). *Cf. Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1573 (Fed.Cir.1984) (noting that in that case "the references and appellant's invention [were] easily understandable without the need for expert explanatory testimony"). The instant case does not require the court to deal with rocket science. This is a case about simple devices that are a matter of every traveller's common experience. Thus, the court need not give such great deference to Plaintiff's experts.

**142**

Finally, Leather argues that when a party relies upon prior art that either was already reviewed by the Patent and Trademark Office ("PTO") in its examination of the patent in suit or is essentially cumulative upon such already reviewed references, that party faces a heightened standard of proof. Again, Plaintiff presents a muddled view of the applicable law. In *American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350, 1359 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984), the Federal Circuit held that when a party challenging a patent chooses to rely solely on evidence that was previously considered by the PTO then that party "has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job." In light of the relatively unsophisticated technology involved in the instant matter, it does not appear that any reasonable grant of deference to the PTO can save the Leather Patent.

## CONCLUSION

For all of the above reasons, the Defendant's motion for partial summary judgement of obviousness of the subject matter of Plaintiff's patent is granted.