**ABBOTT LABORATORIES, an Illinois corporation, Plaintiff,**

v.

**DIAMEDIX CORPORATION, a Florida corporation, Defendant.**

No. 96 C 5201.

United States District Court,
N.D. Illinois,
Eastern Division.

May 21, 1997.

Lee Ann Russo, Daniel E. Reidy, James M. Hall, Jones, Day, Reavis & Pogue, Chicago, IL, for Plaintiff.

George H. Gerstman, Daniel M. Gurfinkel, Terrence W. McMillin, Gerstman, Ellis & McMillin, Ltd., Chicago, IL, Roderick G. Dorman, Christie Parker & Hale, Pasadena, CA, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

### BACKGROUND

On September 29, 1975, Seymour P. Halbert applied to the United States Patent and Trademark Office (the "PTO") for two patents which eventually became United States Patent Nos. 4,474,878 (the " '878 patent") and 4,642,285 (the " '285 patent"). These patents are currently owned by defendant Diamedix Corporation ("Diamedix") and are licenced exclusively to plaintiff Abbott Laboratories ("Abbott"). Abbott filed suit in this court seeking a declaration that the '878 and '285 patents are invalid and that the licensing agreement is void and unenforceable. Specifically, plaintiff points to Japanese Patent Application No. 46/16535 by S. Mukojima (the "Mukojima reference"), claiming that it anticipates both patents under 35 U.S.C. § 102(b), or in the alternative, that it renders the patents obvious under 35 U.S.C. § 103. Plaintiff now moves for summary judgment.

### The Invention

The '878 and '285 patents (the "patents in question") relate to tests known as enzyme immunoassays ("EIAs") used to detect the presence of an antigen in a bodily fluid sample, such as a blood sample. By detecting the presence of antigens, which among other things can be viruses and other disease-causing agents, the tests can be used to test for diseases such as hepatitis. Immunoassays rely heavily on the fact that, when invaded by a foreign antigen, the immune system begins to produce antibodies that attach to the antigen and fight the disease. In adding a solution containing known antibodies to the bodily fluid, sample, Immunoassays detect whether the antibodies have attached to anything in the sample. If they have, then the sample contains the antigen to which the particular antibody naturally attaches, thus revealing that the subject has the suspected disease.

The patents in question describe a particular type of EIA known as a "sandwich" EIA in which an antibody reactive with the antigen sought to be detected is bound, to a solid carrier, such as a plastic disc or test tube. The antibody bound to the carrier is then

contacted or incubated with the sample so that the antibody will bind with any antigen present in the sample. A second antibody, which is linked with an enzyme, is then incubated with the sample. If the sought–after antigen is present, the result is that the antigen becomes "sandwiched" between two antibodies, one that is attached to the solid carrier, and the other that is attached to an enzyme. The "sandwich" would look like the following:

(SOLID CARRIER) $\rightleftarrows$ (ANTIBODY) $\rightleftarrows$ (*ANTIGEN*) $\rightleftarrows$ (ANTIBODY) $\rightleftarrows$ (ENZYME)

The solid carrier is then washed to remove any of the enzyme–linked antibodies that have not attached to antigen. Therefore, if no antigen is present in the sample, all of the enzyme–linked antibodies will be washed away; when the carrier is exposed to a substrate with which the enzyme reacts, no detectable reaction will occur. If antigen is present, however, "sandwiches" will be created, thus preventing the enzyme linked antibodies from being washed away. This time, when the carrier is exposed to a substrate, a reaction will occur, such as a color change. The amount of antigen in the sample is directly proportional to the amount of detectable reaction produced.

### The Mukojima Reference

On March 24, 1971, S. Mukojima filed Japanese Patent Application No. 46/16535 for an improved method for blood serum reactions. Abb. Ex. 5. Though the application never became a patent, it did state the elements of an enzyme sandwich immunoassay. Specifically, the reference discusses an EIA in which an antibody specific to a sought antigen is bound to an insoluble support, which is incubated with the sample so that any antigen in the sample becomes bound to the antibody. Similar to the patents in question, another antibody, linked with an enzyme, is also incubated with the support. If the antigen is present in the sample, a sandwich, similar to the one in the patents in question, is created. A substrate is added to see if enzyme–linked antibodies have bound to antigens.

### SUMMARY JUDGMENT

According to Rule 56(c), a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists where "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the nonmoving party could not prevail on its version of the facts, a trial is unnecessary and summary judgment should be granted. *Seal–Flex, Inc. v. Athletic Track and Court Constr.*, 98 F.3d 1318, 1321 (Fed.Cir.1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). However, the party moving for summary judgment bears the burden of proving the absence of a disputed material issue of fact and establishing its right to judgment as a matter of law. *Id.* Additionally, the court views the facts and the inferences to be drawn from the facts in the light most favorable to the non–moving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

### ANTICIPATION

In the present motion, Abbott argues that the Mukojima reference anticipates the patents in question under 35 U.S.C. § 102(b). Specifically, Abbott argues that claims 1–3, 6–11 and 13 of the '878 patent and claims 1–13 and 15–18 of the '285 patent are anticipated by the Mukojima reference and that every other claim is rendered obvious under 35 U.S.C. § 103 by the Mukojima reference and other prior art. Diamedix agrees that the Mukojima reference "broadly states the elements of an enzyme sandwich immunoassay," Diamedix Mem. of Law in Opp. at 2, however, it believes that the reference was not identical in that it did not state every element of the claims in question, and

that, additionally, it was not enabling.[1]

■ "To be patentable, an invention must be novel." *Friction Div. Prods., Inc. v. E.I. DuPont de Nemours & Co., Inc.*, 693 F.Supp. 114, 122 (D.Del.1988), *aff'd*, 883 F.2d 1027 (Fed.Cir.1989). The invention is not novel if a prior art reference discloses every element of the asserted invention. *Id.* (citations omitted). Therefore, under 35 U.S.C. § 102(b), a person is not entitled to a patent if "the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (1994). Abbott contends that the Mukojima reference, which was laid open for public inspection more than a year before Halbert applied for his patents, Diamedix 12(N) Statement, Uncontested Fact No. 10, falls under this section and, therefore, anticipates most of the claims in the two patents in question.[2]

■ "Anticipation is a question of fact." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed.Cir.1991) (citation omitted). For this court to declare the patents invalid based on anticipation, the court would have to find that a reasonable jury could only find that: 1) all the elements of the claimed invention are described in a single reference; and 2) the reference "describe[s] the . . . claimed invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it." *In re Spada*, 911 F.2d 705, 708 (Fed.Cir. 1990) (citations omitted). Diamedix claims that factual issues still remain and that Abbott has not proven either prong of this test. The court finds that, at a minimum, genuine

issues of material fact exist as to the issue of enablement.

### Burden of Proof

■ By statute, the '878 and '285 patents and each of their individual claims are presumed valid, 35 U.S.C. § 282 (1994), and the party challenging their validity bears the burden of proving invalidity by clear and convincing evidence. *Innovative Scuba Concepts v. Feder Indus.*, 26 F.3d 1112, 1115 (Fed.Cir.1994) (citing *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed.Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987)); *Verdegaal Bros., Inc. v. Union Oil Co. of Calif.*, 814 F.2d 628, 631 (Fed.Cir.1987), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987) (citing *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984)). This burden is constant, never switching to the patentee. *American Hoist*, 725 F.2d at 1360. Therefore, while a patentee may have the burden of going forward with rebuttal evidence once the challenger has shown a *prima facie* case of invalidity, "the ultimate burden of proving invalidity remains with the challenger throughout the litigation." *Innovative Scuba*, 26 F.3d at 1115.

Abbott urges this court to shift the burden of proof to Diamedix once it has proven a *prima facie* case. Abb. Memo. of Law at 7. Asserting that the Mukojima reference is presumed to be enabling, Abbott argues that Diamedix has the burden of proving that the reference is not, in fact, enabling. While numerous courts have stated that prior art references are entitled to a presumption of enablement, *see e.g., Ciba–Geigy Corp. v.*

---

1. Diamedix argues that the Mukojima reference is hearsay and that it should not be considered by the court for purposes of this motion. However, the Mukojima reference is being offered as a verbal act and not to prove the truth of the matter asserted. The relevance of the document is its very existence and the effect its existence had on the knowledge base of those in the field of art. As such, it is not hearsay.

2. Though Diamedix did not admit to Abbott's Assertion of Uncontested Fact No. 10, in its Local Rule 12(N) response, Diamedix did not contest the fact that the Mukojima reference was laid

open for public inspection in October, 1972, which was more than one year before the applications were filed for the patents in question. Therefore, the court deems Diamedix to have admitted this fact. However, the court notes that it is an open question, which must be determined on the specific facts of each case, whether a foreign patent application that is available to the public is a "printed publication" under § 102(b). *See, e.g., In re Wyer*, 655 F.2d 221 (Cust. & Pat.App.1981); *see also* DONALD S. CHISUM, CHISUM ON PATENTS § 3.04[2] n. 17 (Rel. 37 Feb. 1991).

*Alza Corp.,* 864 F.Supp. 429, 438 (D.N.J. 1994), *aff'd in pertinent part, vacated in part,* 68 F.3d 487 (1995); *Procter & Gamble Co. v. Nabisco Brands, Inc.,* 711 F.Supp. 759, 772 (D.Del.1989); *Rockwell,* 37 Fed.Cl. 478, 503–04 (1997), these courts have each relied incorrectly upon *In re Sasse,* 629 F.2d 675, 681 (Cust. & Pat.App.1980) for the proposition that the patent holder bears the burden of proving that prior art references are not enabling. In *Sasse,* the court was faced with an appeal from a PTO Board of Appeals decision affirming the rejection of certain patent claims. In such a situation, where the applicant has not yet received a patent, it is clearly up to the applicant to prove to the PTO that he or she is entitled to one. Thus, once the PTO cites a prior art reference that enjoys a presumption of enablement, the burden shifts to the applicant. However, in the present case, unlike *Sasse,* the patents in question themselves have a presumption of validity. Since the burden is always on the challenger to show invalidity by clear and convincing evidence, *Jervis B. Webb Co., v. Southern Sys.,* 742 F.2d 1388, 1392 (Fed.Cir. 1984) ("Regardless of the prior art introduced by the party asserting invalidity, the presumption [of validity] remains intact."); *Oak Indus., Inc. v. Zenith Electronics Corp.,* 726 F.Supp. 1525, 1530 (N.D.Ill.1989) ("This clear and convincing standard applies even though the prior art introduced in court was not considered by the PTO."), once Abbott has shown that each and every claim is cited in the Mukojima reference, *i.e.,* identity, Diamedix only has the burden of producing some material evidence which places the enablement of the reference in question. Once it has done so, Abbott must show by clear and convincing evidence that the Mukojima reference was, in fact, enabling.

### Enablement

In Working Example 2, Mukojima described a method for detecting the antigen alkaline phosphatase ("AlP") using a "sandwich" EIA. Abb. Ex. 5 at 7–9. Both parties conducted tests to determine whether the Mukojima reference was enabling. Abbott contends that tests conducted by both sides' experts reveal that the Mukojima reference worked and was, therefore, enabling. First,

Abbott argues that the test performed by Diamedix produced a result in which there was greater reaction on filter paper to which anti-AlP antibodies were bound than on filter paper to which control substances were applied and, therefore, the test "largely worked." Abb. Mem. of Law at 9. Abbott further asserts that the test "largely worked" despite the fact that Diamedix departed from the method disclosed in Mukojima by incubating at 37°C rather than room temperature (22°C). *Id.* Second, Abbott argues that its own expert, Dr. Richard Decker, was able to make the Mukojima reference work using the instructions in the Mukojima reference combined with the knowledge of a person of ordinary skill in the art in the mid–to–early–1970's.

Diamedix asserts, however, that test results from both parties show that the Mukojima reference was not enabling without resort to undisclosed steps that were unknown to one of ordinary skill in the art in the mid–to–early–1970's. Diamedix Mem. of Law at 13. First, Diamedix argues that its own tests, conducted by Dr. Jon Knowles, proved that the Mukojima reference, without modification, does not allow one skilled in the art to produce a workable test. O'Beirne Decl. ¶ 37. Second, Diamedix asserts that in order to make the Mukojima reference work, Abbott had to make the following modifications: (1) use of a temperature not disclosed in the reference; (2) addition of a protein diluent to inhibit non-specific binding, a step not disclosed in the reference; (3) substitution of purified reagents for those disclosed in Mukojima; (4) optimization of reagents, a step not disclosed in the reference; and (5) substitution of a substance that enhanced the detection step disclosed in Mukojima. *See, e.g.,* Diamedix 12(N) Statement, Resp. to Uncontested Fact No. 11. Furthermore, Diamedix argues that Abbott's expert, Dr. Decker, took 100 hours to make the Mukojima reference work, which they label as "undue experimentation." *Id.* While Abbott does admit that certain adjustments to the Mukojima reference did, in fact, have to be made in order to make the reference work, Abb. Reply Mem. at 22, Abbott argues that the Mukojima reference disclosed more than Diamedix admits,

and that the adjustments Abbott did make were known to those of ordinary skill in the mid–to–early–1970's. Abb.'s Reply to Diamedix's Resp. to Uncontested Fact Nos. 11–16. Furthermore, Abbott argues that while Dr. Decker did spend 100 hours conducting experiments, this amount of time does not constitute "undue experimentation." *Id.*, Abb.'s Resp. to Diamedix Uncontested Fact No. 159.

Enablement, *i.e.*, whether a reference teaches those skilled in the art to make and use the invention without "undue experimentation," is a question of law, which may involve subsidiary questions of fact. *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed.Cir.1997); *In re Epstein*, 32 F.3d 1559, 1568 (Fed.Cir.1994). In the present case, two primary questions of fact remain open that prevent this court from deciding the issue. First, who was the person of ordinary skill in the art in the mid–to–early–1970's? Second, what procedures were known by those persons of ordinary skill? Based on these factual determinations, as well as secondary factual considerations, such as the amount of time necessary to conduct experiments in this field and the difficulties encountered in such experimentation, enablement can be resolved. The court considers these issues in turn.

For a patent to be anticipated by a printed reference, the reference must describe the patented invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it. *In re Spada*, 911 F.2d at 708. The reference need not describe every last detail that would make the invention work. It may omit principles well known to those of ordinary skill; it need only describe enough information to allow one of ordinary skill in the art to make the invention work. "The person of ordinary skill in the art is a hypothetical person who is presumed to know the relevant prior art." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir.1995). Resolution of this threshold issue will allow the factfinder to determine objectively whether the claim was anticipated, rather than focusing on the subjective ability of the inventor to use the prior art reference in creating his or her invention. *See Ryko*

*Manuf. Co. v. Nu–Star, Inc.*, 950 F.2d 714, 718 (Fed.Cir.1991) (discussing the level of ordinary skill in the context of a § 103 obviousness inquiry).

Abbott: contends that the level of ordinary skill in the art of immunoassays has already been decided by two different district courts. In *Hybritech Inc. v. Abbott, Labs.*, 4 U.S.P.Q.2d 1001, 1008–09, 1987 WL 123997, *aff'd*, 849 F.2d 1446 (Fed.Cir.1988), the court considered a patent for a "sandwich"–type assay and ruled that the experts used by Abbott to prove that the contested technology was "obvious" under § 103 were not individuals of ordinary skill. The court stated that those of ordinary skill are not "persons of superior skill, intellect and insight," *Hybritech*, 4 U.S.P.Q.2d at 1008, or those who are skilled in remote arts or geniuses in the field. *Id.* at 1008 n. 6 (citing *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 697 (Fed.Cir.1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984)). Instead, the finder of fact must look to "those in the 'trenches,' actually attempting to produce commercial products." *Id.* at 1009. Similarly, in *Electro–Nucleonics Labs., Inc. v. Abbott Labs.*, 214 U.S.P.Q. 139, 142 (N.D.Ill.1981), the court ruled that one ordinarily skilled in the art of detecting Hepatitis B surface antigen "was either a hepatologist, a medical doctor who specialized in the diagnosis and treatment of the disease hepatitis, or a biochemist who had knowledge of the methods developed at that time for the detection of the Hepatitis B surface antigen." Abbott contends that their own experts, Dr. Larry J. Kricka, D. Phil., F.R.C. Path. and Richard H. Decker, Ph.D., applied these standards in their experimentation.

Conversely, Diamedix argues that Abott's experts applied more than the relevant ordinary skill in their experimentation and that their personal knowledge as experts may not be imputed to the hypothetical person of ordinary skill. Diamedix points to the fact that the Federal Circuit has stated that a person of ordinary skill "is not one who undertakes to innovate, whether by patient, and often expensive, systematic research or by extraordinary insights." *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448

(Fed.Cir.1985); Diamedix Mem. of Law at 19. Diamedix's expert, Andrew J. O'Beirne, Dr.P.H., concluded that one of ordinary skill in the field "would be a person having several years experience developing immunoassay kits with an educational level of B.S. or M.S. degree in Immunology or Biochemistry." O'Beirne Decl. ¶ 30.

The level of ordinary skill in the art is a factual question. *Ryko Manuf.*, 950 F.2d at 718. In determining who falls into this category, the factfinder may consider various factors including: the "type of problems encountered in the art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field." *In re GPAC*, 57 F.3d at 1579 (quoting *Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed.Cir.1986)). Though Abbott does point to two cases that discuss the level of ordinary skill in the context of immunoassays, neither give the court enough direction to state, as a factual matter, what the level of ordinary skill was in the immunoassay field in the early–to–mid–1970's. The *Hybritech* court stated only that those in the "trenches" were:he relevant members of the class. *Hybritech*, 4 U.S.P.Q.2d at 1009. This standard is too vague to apply to the specific facts of this case. Similarly, while the *Electro–Nucleonics* case did relate to radioimmunoassay technology, the court focused its inquiry on those skilled in the detection of the Hepatitis B surface antigen in November 1970, a field much too narrow for the present. case. *Electro–Nucleonics*, 214 U.S.P.Q. at 142. Therefore, a genuine issue exists as to who the person of ordinary skill in the field of art was as of the date of invention.

Additionally, because the identity of the person of ordinary skill is a factual issue to be determined at trial, the question of whether Abbott's expert made "modifications" that a person of ordinary skill would have routinely made during experimentation is also a factual issue. Additionally, whether Abbott's expert engaged in "undue experimentation" cannot be determined until the person of ordinary skill is defined and further factual issues are resolved, such as the amount of time necessary to conduct experiments in the field of art and the difficulties encountered in such experimentation.[3]

### *Identity*

As already stated, to prove anticipation, the party challenging the patents must demonstrate, by clear and convincing evidence, identity of invention. *See Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir.1992) (citations omitted). "Identity of invention is a question of fact and one who seeks such a finding must show that each element of the claim in issue is found, either expressly or under principles of inherency, in a single prior art reference." *Id.* If no single prior art reference anticipates each and every element of the claimed invention, there can be no identity and, thus, no anticipation. *RCA Corp. v. Applied Digital Data Sys. Inc.*, 730 F.2d 1440, 1444 (Fed.Cir.1984). While admitting that the Mukojima reference "broadly states the elements of an enzyme sandwich immunoassay," Diamedix Mem. of Law in Opp. at 2, Diamedix argues that the Mukojima reference does not contain each and every element of the claims found in the patents in question.

Having already found that there is a genuine issue of material fact as to enablement, the court declines to consider the identity issue at this time. The court will be in a better position to construe the claims and direct genuine factual issues to the factfinder at trial.

**3.** Abbott contends that Diamedix's expert in a previous, but related, case conceded that one of ordinary skill between 1973 and 1975 could have produced a working assay based upon the Mukojima reference. Abb. Mem. of Law at 7–8. However, Dr. Fuccillo stated only that "experts in the field of radioimmunoassay" in 1974 could have modified the Mukojima reference to make it work. Fuccillo Dep. at 178. He repeatedly asserted that the reference would not teach one of ordinary skill in the art, such as a technician, to make the Diamedix invention. *Id.* While Dr. Fuccillo's definition of "one of ordinary skill" may or may not be accurate, Dr. Fuccillo certainly cannot be accused of having admitted that the Mukojima reference was enabling.

## OBVIOUSNESS

■ Abbott argues in the alternative that the patents in question are rendered obvious by prior art under 35 U.S.C. § 103. Obviousness refers to the fact that "an invention must not have been obvious to one with ordinary skill in the art to which the subject matter of the invention pertains at the time of the invention and in light of the teachings of the prior art. [Obviousness] is distinct from novelty in the sense that an invention may be obvious even though it is not identically disclosed anywhere in the prior art." 2 DONALD S. CHISUM, CHISUM ON PATENTS § 5.01., at 5–10 to 5–11 (Rel. No. 51 Aug. 1994)

In its summary judgment motion, Abbott discusses obviousness only in reference to four of the Halbert claims, each of which contains a single element not disclosed in the Mukojima reference, arguing that these claims are rendered obvious by the Mukojima reference in combination with other prior art. Abbott argues that: (I) claims 4 and 5 of the '878 patent and claim 13 of the '285 patent, which recite the use of p-nitrophenyl phosphate as a substrate that reacts with an enzyme label to produce a detectable reaction product, are rendered obvious by a combination of the Mukojima reference and a 1973 publication by Luc Belanger, Abb. Ex. 10; and (2) claim 12 of the '878 patent, which recites the use of a horse globulin solution to eliminate non–specific false positives, is rendered obvious by a combination of the Mukojima reference and a 1971 Australian patent application filed by Pfizer Corporation. Abb. Ex. 18. Abbott apparently discusses only four claims in its obviousness discussion because it relies mainly on its anticipation claim in seeking summary judgment. Since the court finds that there are genuine issues of material fact to be resolved regarding the anticipation claim, the court could not grant summary judgment even if it were to find the four claims cited by Abbott to be obvious. As such, the court discusses obviousness mainly for the purpose of illuminating issues for trial.

■ Although the ultimate question of whether a patent claim is rendered obvious by prior art is a legal question, the determi-

nation is based on underlying factual questions. *Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1572 (Fed.Cir.1988), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988) (citations omitted). In *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), the Supreme Court stated that relevant factual questions had to be resolved before a legal determination could be made as to the question of obviousness, including: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art. Additional factors to consider include "objective considerations such as commercial success, long felt need, failure of others, and copying." *Heidelberger Druckmaschinen v. Hantscho Commercial Prods.*, 21 F.3d 1068, 1071 (Fed.Cir.1994) (citing *Graham*, 383 U.S. at 17, 86 S.Ct. at 693)

The court turns first to the issue of the scope and content of the prior art. "The 'scope' of the prior art determines what references fall within the relevant prior art." *Joy Techs., Inc. v. Quigg*, 732 F.Supp. 227, 232–33 (D.D.C.1990). Diamedix appears to argue that the Belanger and Pfizer references are not "analogous" to the Halbert patents since they refer to immunoassays that are not "sandwich"–type immunoassays. Diamedix Mem. in Opp. at 23. "Whether a reference in the prior art is 'analogous' is a fact question." *In re Clay*, 966 F.2d 656, 658 (Fed.Cir.1992) (citations omitted). Two criteria have evolved for deciding this question: "(1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *Id.* (citations omitted). Diamedix's contention that the Belanger and the Pfizer references are not, at a minimum, reasonably pertinent to sandwich EIAs, is disingenuous. Even though Halbert and Mukojima dealt with "sandwich"–type immunoassays, the basic field these inventors

worked in was that of immunoassays.[4] In fact, the Belanger reference dealt specifically with EIAs, the subject of both patents in question. Abb. Ex. 10. The Australian reference "relates to diagnostic reagents for the presence of hepatitis–associated antigen, also known as Hepatitis B antigen or Australia antigen, or for the presence of the antibody thereto, in blood samples." Abb. Ex. 18 at 2. Similarly, the '878 patent deals with an immunoassay test "provided for the detection of an antigen associated with hepatitis in body fluids." Diamedix Ex. G at 1. Certainly, the Australian reference is reasonably pertinent to the problems that Halbert attempted to solve. No reasonable jury could find other than that both references are "analogous" to the patents in question and, therefore, fall within the relevant prior art.

Turning to the "content" prong, "the 'content' of the prior art is what those references teach a person of ordinary skill in the art." *Joy Techs.*, 732 F.Supp. at 233. However, as already noted, the level of ordinary skill in the field of art in the early–to–mid–1970's is a factual question to be resolved at trial. Genuine issues of material fact, therefore, exist as to both the level of ordinary skill and the content of the prior art.

■ The court next turns to the issue of the differences between the prior art and the claims at issue. As a preliminary matter, it is up to the court to interpret the claims in light of the specifications and prosecution history. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1567–68 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). As explained above, since summary judgment must be denied, the court declines to construe the claims at this juncture. At trial, the court will have more information upon which to make these legal determinations.

Finally, the court notes that in combining the Mukojima reference with the prior art, Abbott "cannot pick and choose among the individual elements of assorted prior art references to recreate the claimed invention," unless they can show "some teaching or sug-

gestion in the references to support their use in the particular claimed combination." *SmithKline Diagnostics v. Helena Labs. Corp.*, 859 F.2d 878, 886–87 (Fed.Cir.1988). Abbott has not provided the court with enough facts to resolve, at this stage, whether the various combinations are supported in the references.

In conclusion, while the prior art cited by Abbott is relevant to the issue of obviousness, Abbott has not met its burden. The court must deny summary judgment on the issue of obviousness.

### *MOTION TO STRIKE*

Finally, Abbott filed a motion to strike and/or dismiss certain of Diamedix's affirmative defenses and each of its counterclaims. However, after Abbott filed this motion, Diamedix filed an amended answer to its second amended complaint. Therefore, the court denies Abbott's motion without prejudice. Abbott may refile a similar motion no later than June 9, 1997.

### *CONCLUSION*

Abbott's motion for summary judgment is denied. Abbott's motion to strike and/or dismiss certain of Diamedix's affirmative defenses and each of its counterclaims is denied without prejudice. Abbott may refile the latter motion no later than June 9, 1997.

**IT IS SO ORDERED.**

---

4. This statement is not a finding as to what the "field of art" is, which is a question still to be resolved at trial.